UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------

ALEX PANZARDI,

                Plaintiff,

v.

POUL JENSEN, ROLANDO PEREZ, DEBORAH
BREWER, ALBAN BOUCHER, SHANNON
GREENE, and DR. CARMEN VELOZ,

                Defendants.

------------------------------------------------------------

NOT FOR ELECTRONIC OR
PRINT PUBLICATION

**MEMORANDUM & ORDER**
13-CV-4441 (MKB)

MARGO K. BRODIE, United States District Judge:

On July 19, 2013, the Court received several documents from Plaintiff Alex Panzardi, a prisoner incarcerated at Five Points Correctional Facility, including a hand-written letter addressed to "District Court Staff," a completed application to proceed *in forma pauperis* and a Prisoner Authorization form. (*See* Docket Entry No. 1.) No complaint was included among the documents. Plaintiff filed an Amended Complaint on November 1, 2013. (Am. Compl., Docket Entry No. 8.) By Memorandum and Order dated March 7, 2014, the Court granted Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, but dismissed the Amended Complaint for lack of jurisdiction and for failure to state a claim. (Docket Entry No. 10.) Plaintiff was granted leave to replead his 42 U.S.C. § 1983 claim within 30 days. After being granted two extensions, Plaintiff filed a Second Amended Complaint. (Sec. Am. Compl., Docket Entry No. 14.)

## I. Background

In the Second Amended Complaint, Plaintiff claims that the Defendants, employees at Graham Windham Services to Families and Children ("the Agency"), interfered with his parental relationship with his minor son, J.P.P., and medicated J.P.P. without Plaintiff's permission. According to Plaintiff, after he became incarcerated, his son was "turned over to the custody" of the "Commissioner o[f] Social Services" and the Agency. (Sec. Am. Compl. ¶ 17.) Plaintiff alleges that Defendants (1) "failed to assist [Plaintiff] with establishing visits [with] his son;" (2) "failed to assist [Plaintiff] in written communications [with his son];" (3) "have not complied with Family Court orders;" (4) "tried to revoke [Plaintiff's] custody-parental rights;" and (5) have medicated J.P.P. despite Plaintiff's refusal to provide consent. (*Id.* ¶¶ 28–37.)

## II. Discussion

As the Court previously explained, to the extent that Plaintiff seeks review of decisions pertaining to his parental rights, including any visitation rights and/or restrictions on those rights, such review is barred by the "domestic relations exception" to federal jurisdiction described in *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (describing the domestic relations exception as "divest[ing] the federal courts of power to issue divorce, alimony, and child custody decrees"). Moreover, review of any state court decisions or orders is further precluded by the *Rooker-Feldman* doctrine. *See Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) (*Rooker-Feldman* precludes federal review of family court proceedings regarding issues of child custody, including issues "inextricably intertwined" with the state court's determinations.). Accordingly, to the extent that the Second Amended Complaint continues to advance claims related to his visitation rights, orders issued pursuant to the Family Court's authority, and the

status of his custodial or parental rights, such claims are not within this Court's jurisdiction, and are dismissed.

However, the Court finds that Plaintiff has, arguably, sufficiently stated a cause of action under Section 1983 by alleging that Defendants medicated his son without his consent. In order to sustain a claim for relief under Section 1983, a plaintiff must allege (1) that the challenged conduct was "committed by a person acting under color of state law," and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

Plaintiff asserts that Defendants acted under "color of state law," and that his son was "turned over to the custody" of the Agency *and* the Commissioner for Social Services. (*See* Sec. Am. Compl. ¶¶ 11–17.) While Plaintiff does not specify the relationship between the Agency and the Commissioner for Social Services, as it relates to their control and/or custody of his son, to the extent that the Agency was "delegated a public function by the state" by retaining custody of J.P.P., Plaintiff may meet the color-of-state-law requirement. *See Perez v. Sugarman*, 499 F.2d 761, 765 (2d Cir. 1974) (Private childcare agencies that perform a "public function" of accepting custody of neglected and abandoned children are "state actors" for the purposes of Section 1983); *S.W. ex rel Marquis-Abrams v. City of New York*, --- F. Supp. ----, ----, 2014 WL 4627747, at *10 (E.D.N.Y. 2014) (collecting cases, finding private child care agencies accepting custody of neglected and abandoned children to be state actors); *Vega v. Fox*, 457 F. Supp. 2d 172, 182 (S.D.N.Y. 2006) ("It is now well established in this circuit that private child-care

institutions authorized by New York's Social Services Law to care for neglected children are acting 'under color of state law' for purposes of [S]ection 1983.").[1]

Plaintiff has asserted that Defendants' conduct deprived him of his constitutional right to direct the medical care of his child. Parents have a "constitutionally protected liberty interest in the care, custody and management of their children." *Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2011). This liberty interest includes the right to direct medical care for their child. *See Emrik v. Chemung Cnty. Dep't of Social Servs.*, 911 F.2d 863, 867 (2d Cir. 1990) ("[T]he constitutional liberty interest of parents . . . though not beyond limitation . . . includes a significant decision-making role concerning medical procedures sought to be undertaken by state authority upon their children.").

According to Plaintiff, Defendants sought his consent for certain treatment plans for his son, but proceeded to medicate his son, notwithstanding his refusal to provide such consent. (*See* Sec. Am. Compl. ¶¶ 36(A)–(B).) Although the Second Amended Complaint suggests that Defendants possessed some custodial rights with respect to Plaintiff's son, (*see id.* ¶ 17), Plaintiff asserts that he retains "full parental rights over his son." (*Id.* ¶ 36.) At this juncture the Court

---

[1] In the March 7, 2014 Memorandum and Order, the Court instructed Plaintiff to specify his allegations as to each Defendant by describing what each Defendant did or failed to do in violation of his civil rights. (Docket Entry No. 10 at 11.) The Second Amended Complaint alleges that the individual Defendants were supervisors and/or employees of the Agency, "had personal involvement," and were "involved in the treatment team" for Plaintiff's son. (Sec. Am. Compl. ¶¶ 11–16.) By claiming that each of the Defendants was directly involved in the medical treatment of his son, Plaintiff has sufficiently pled personal involvement of the individual Defendants. *See Platt v. Inc. Vill. of Southampton*, 391 F. App'x 62, 65 (2d Cir. 2010) (Liability under Section 1983 can be established by showing direct participation or when asserted against a supervisory official, by showing that the supervisor had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference.); *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir. 2010) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983.").

assumes, without deciding, that, based on the facts alleged in the Second Amended Complaint, Plaintiff may sustain a due process claim based on the deprivation of his right to direct the medical care of his child, notwithstanding any custodial rights possessed by Defendants.[2] *See Fuentes v. Bd. of Educ. of City of New York*, No. 01-CV-1454, 2002 WL 1466421, at *2 (E.D.N.Y. July 10, 2002) (noting that "non-custodial status, whether by operation of a divorce decree, incarceration, or otherwise, does not automatically divest a non-custodial parent of all parental rights" (citing *Crane v. Crane*, 694 N.Y.S.2d 763, 766 (App. Div. 1999) (granting mother primary physical custody of child but father retained right to make decisions concerning the welfare of children)).

## III. Conclusion

For the reasons set forth above, Plaintiff's due process claim related to the administration of medicine to his child without his consent shall proceed. The remaining claims are dismissed. The Clerk of Court shall issue a summons to Defendants, and the United States Marshal Service is directed to serve the summons, Second Amended Complaint and a copy of this Memorandum and Order, as well as the Court's Memorandum and Order dated March 7, 2014, upon Defendants without prepayment of fees. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3)

---

[2] Plaintiff also claims that Defendants interfered in his parental relationship because they "failed to assist Mr. Panzardi with establishing visits . . . [and] written communications to J.P.P. and have not complied with Family Court Orders." (Sec. Am. Comp. ¶¶ 32–33.) Plaintiff further alleges that Defendants "are not attempting to assist [Plaintiff] and J.P.P. in forming a relationship or in plan[n]ing for [Plaintiff's] release and custody of J.P.P. in 2014–2015." (*Id.* ¶ 39.) Plaintiff states that Defendants have "effectively enforced their own version of retaliation by continuing to remove Mr. Panzardi's parental rights." (*Id.* ¶ 40(B).) As explained above, the Court does not have jurisdiction to issue relief pertaining to Plaintiff's parental and/or custodial rights or pertaining to compliance with orders issued by the Family Court.

that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED:

s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: February 18, 2015
       Brooklyn, New York